## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| COMPASS BANK, successor in interest to Texas State Bank | § § | |
| *Plaintiff,* | § § | |
| | § | |
| vs. | § | |
| | § | CIVIL ACTION NO. 4:11-CV-00964 |
| SUNBELT MULTIMEDIA CO., MULTIMEDIA ASSOCIATES, LTD., KTLM TV, INC., GUTIERREZ OIL COMPANY, SAM F. VALE, AND ADVERTISING EXECUTIVES, LLC | § § § § § § | |
| *Defendants.* | § | |

## ORDER APPOINTING RECEIVER

Pending before the Court is the Verified Application for the Appointment of a Receiver (Dkt. No. 23, the "Application") filed by Plaintiff Compass Bank, successor in interest to Texas State Bank ("Plaintiff"). After considering the Application, the Response to the Application (Dkt. No. 32) filed by Defendants Sunbelt Multimedia Co. ("Sunbelt"), Multimedia Associates, Ltd. ("Multimedia"), KTLM TV, INC. ("KTLM"), Gutierrez Oil Company ("Gutierrez"), Sam F. Vale ("Vale") and Advertising Executives, LLC ("AdEx") (collectively, "Defendants"), the Stipulation (Dkt. No. 39) related to the Application entered into by Plaintiff and Defendants, Plaintiff's Reply in Support of the Application (Dkt. No. 40), the arguments of counsel, the applicable law, and the competent evidence, the Court makes the following findings and issues the following orders.

The Court FINDS as follows:

1. Plaintiff is owed at least $13,785,074.91 as of August 31, 2012, on loans made to and/or guaranteed by Defendants (the "Indebtedness");

2. Sunbelt leased certain office space in McAllen, Texas, from Plaintiff (the "Lease"). The Lease, as amended, expired on November 30, 2009. Plaintiff is owed at least $250,000 in past due rent as of September 1, 2012. In 2012, Defendants Sunbelt,

Vale, KTLM, Multimedia, and AdEx – the parties obligated by contract or guaranty to pay the sums due under the Lease – have failed to pay rent for at least the months of February, March, April, May, August, and September;

3. Plaintiff has a valid and perfected security interest on all personal property of the Defendants, with priority over the claims of any other party to secure repayment of the Indebtedness;

4. Plaintiff has a first lien deed of trust on the real property owned by Multimedia to secure payment of the Indebtedness;

5. Defendants are subject to the claims of other creditors. Lone Star National Bank claims that Defendants owe in excess of $4 million by the Defendants;

6. Defendants Sunbelt, Multimedia, KTLM, Vale, and AdEx participate in the operation of a television station broadcasting from McAllen, Texas (the "Station"). Sunbelt is the operating company that holds the television broadcast license with the Federal Communications Commission; Multimedia owns personal and real property; KTLM is a broadcast operating entity that is named after the call sign of the Station; AdEx collects most or all of advertising revenue received from the Station and pays many of the individuals employed by Defendants; and Vale is an individual who owns and controls Defendants and other related and unrelated entities;

7. The total value of the collateral of Plaintiff is significantly less than the amount owed to Plaintiff, and the proposed Receivership Property (as defined below) is in a seriously unsound financial condition;

8. Despite their failure to satisfy the Indebtedness to Plaintiff, the Defendants have continued to make interest payments on the indebtedness owed by Defendants to Lone Star Bank from October 2008 to June 2012;

9. AdEx paid Vale approximately $100,000 in compensation in 2011;

10. Plaintiff and Defendants are parties to a Forbearance Agreement dated December 23, 2008, a Second Forbearance Agreement dated November 7, 2011, and a mediation agreement dated May 24, 2012. Defendants breached their obligations under each of these agreements, including obligations to make certain payments to Plaintiff and to sell the Station or the notes associated with the Indebtedness;

11. Defendants have acknowledged in the sworn Second Forbearance Agreement that they are in default of their obligations under the Indebtedness and have no defenses to Plaintiff's claims associated with the Indebtedness;

12. Plaintiff has demonstrated a high likelihood of success on the merits with respect to its claims against Defendants;

13. The Defendants have attempted to sell the Station since 2008 but have failed to do so. A sale of the Station is inevitable and an immediate sale under the supervision of a

qualified receiver is in the best interest of Plaintiff, Defendants, and all other interested persons;

14. A receivership is the most effective and only practical remedy under the circumstances. Based on the testimony of W. Lawrence Patrick and Federal Communications Commission ("FCC") requirements applicable to the Station, the Court finds that the lengthy process associated with FCC approval of traditional changes in ownership or control renders the Plaintiff's traditional legal remedy of foreclosure on its collateral is impractical and would likely result in an interruption of Station operations. *See, e.g.,* 47 U.S.C. § 214(a); 47 C.F.R. § 63.03-63.04. By contrast, federal law expressly contemplates transfer of control of a FCC-regulated broadcaster to a receiver. 47 C.F.R. § 73.3541; FCC Form 316. Appointing a receiver will likely prevent an interruption in Station operations and protect the viewing public's interest in continued access to the Station's news and other broadcasts. Thus, the appointment of a receiver will likely do more good than harm;

15. A receivership is necessary to conserve the Receivership Property;

16. The legitimate rights of the Defendants and other interested persons will be protected by the appointment of a receiver;

17. Defendants granted Plaintiff the right to enforce any legal and equitable remedies associated with its collateral pursuant to the security agreements executed by Defendants in connection with the Indebtedness, and Sunbelt agreed to execute any documents necessary to transfer its FCC license in connection with a transfer of ownership of the Station;

18. Plaintiff's proposed receivership is for the lawful and legitimate purpose of maintaining the uninterrupted operation of the Station, conducting a Court-supervised sale of the Station, overseeing a transition in ownership, and accomplishing other objectives permitted under the terms of the loan documents associated with the Indebtedness and attached to the Verified Complaint and Application;

19. The proposed receiver, W. Lawrence Patrick, is an experienced radio and television station operator who has served as a receiver for more than forty stations and whose experience includes resolving distressed station situations and taking control of stations, managing them for months or years, and liquidating those stations to satisfy creditors; and

20. W. Lawrence Patrick is well qualified to serve as a receiver over the Station and the other Receivership Property.

Accordingly, subject to the restrictions set forth below, the Court FINDS the

Application should be and is hereby GRANTED.

8461626v.1

Pursuant to federal law and federal equitable principles and powers of a United States District Court and the terms notes and security instruments related to Defendants' Indebtedness, the Court ORDERS as follows:

## 1.    Appointment of Receiver and the Receivership Property.

1.1.    W. Lawrence Patrick of Patrick Communications (the "Receiver"), whose address is 6805 Douglas Legum Drive, Suite 100, Elkridge, Maryland 21075 is appointed Receiver of the Receivership Property (as defined below), effective upon entry of this Order (the "Effective Date"). The Receiver's duty to act as Receiver is subject to the terms of this Order.

1.2.    The term "Receivership Property" includes:

(a)    The real property subject to the Lease Agreement (the "Property");

(b)    Defendants' (except Gutierrez) tangible and intangible property ~~usury~~ usable in connection with the operations on the Property;

(c)    All Income, all fixtures, trade fixtures or tenant improvements of every kind or nature located in or upon or attached to or used or intended to be used in connection with the operation of the Property;

(d)    The Station and all permits, licenses (including FCC licenses) associated with the operation of the Station (operating as call sign "KTLM" and regardless of the entity currently holding such permits and licenses);

(e)    All contracts;

(f)    All trade names and trademarks owned or used by Defendants (except Gutierrez);

(g)    All books, records, accounts, or documents held by Defendants (except Gutierrez); and

(h)    All other property, estate, right, title and interest as described in the notes and security agreements between Plaintiff and Defendants.

1.3.    The term "Income" means, collectively all cash, cash on hand, checks, cash equivalence, credit card receipts, demand deposit accounts, bank accounts, cash management or other financial accounts, bank or other deposits and all other cash collateral (all whether now existing or later arising); current and past due earnings, revenues, rents, issues and profits, accounts or accounts receivable (all whether unpaid, accrued or to become due); all claims to rent, issues, profits, income, cash collateral and all other gross income derived with respect to the Station or business operations of the Station regardless of whether earned before or after entry of this Order.

1.4.    As of the Effective Date, the Receiver is authorized to direct and take immediate possession and full control of the Receivership Property and to take such other actions as the Receiver deems reasonable and appropriate to take possession, to exercise full control over, to prevent waste, and to preserve, manage, secure and safeguard the Receivership Property. None of the Defendants in this action shall have either possession or control of, or any right to the Receivership Property.

1.5.    The Receiver shall take possession of and receive from all depositories, banks, credit unions, brokerages and otherwise (collectively the "Financial Institutions"), any money on deposit in all such Financial Institutions belonging to or arising from the operation of the Receivership Property, whether such funds be in accounts titled in the name of any of the Defendants or not (but excluding any monies paid to or held by Plaintiff). All Financial Institutions are directed to deliver such deposits to the Receiver and such records as the Receiver may reasonably request with respect to such accounts. The Receiver may indemnify the Financial Institution upon whom such demand is made, and is empowered to open or close any such accounts. The Receiver shall deposit monies and funds collected and received in connection with the Receivership Property at a federally insured banking institution or savings association with offices in the State of Texas, which are not parties to this case.

1.6.    All Defendants and their property managers, employees, and agents are ordered to cooperate with Plaintiff in the transition of the management of the Receivership Property to the Receiver and, on the Effective Date, shall turn over to the Receiver all of the following pertaining to the Receivership Property (but only to the extent that such items are in their possession, custody or control):

(a)    All keys;

(b)    The petty cash fund, if any;

(c)    A current aged account receivables or delinquency report;

(d)    An aged listing of all trade payables and other payables;

(e)    A copy of any records relating to operating expenses for the Station;

(f)    A list of utilities and utility accounts;

(g)    Year-end 2011 operating statement and year-to-date 2012 operating statement;

(h)    All on-site employee payroll records and employee files and applications;

(i)    An inventory of all equipment, furniture, vehicles and related titles, and supplies for the Station;

(j)    All advertising agreements;

(k)    All existing service contracts;

(l)     All franchise agreements, including all amendments;

(m)    All signage agreements, including all amendments;

(n)     All pending bids for contractor work;

(o)     All insurance policies on the Station and their terms;

(p)     All vendor insurance certificates;

(q)     Documents identifying and summarizing any pending litigation (excluding this action);

(r)     All documents, books, records and computer files, computer equipment, software, management files, equipment, furniture, supplies and all passwords needed to access such software and computer files, Email accounts maintained for the Station (and all off-site financial records) including, but not limited to, all records concerning the Income, and the operation and management of the Station; and

(s)     Such other records pertaining to the management of the Receivership Property as may be reasonably requested by the Receiver.

1.7.    Defendants shall prepare and submit to the Plaintiff and the Receiver an accounting for all Income received since January 1, 2011. This accounting shall be delivered no later than fourteen (14) days after the Effective Date.

1.8.    All Defendants and their property managers, employees, and agents are prohibited from removing any personal property belonging to them from the Station or diverting any Income.

1.9.    All Defendants and their property managers, employees, and agents shall fully cooperate with the Receiver in adding the Receiver and Plaintiff as additional insureds and the Plaintiff as the loss payee on all insurance relating to the operation and management of the Receivership Property including, but not limited to, fire, extended coverage, property damage, liability, fidelity, errors and omissions, and workers' compensation, and modifying the policies if deemed appropriate by the Receiver, but subject to Approval for any modifications to insurance. Defendants and their property managers, employees, and agents are prohibited from cancelling, reducing, or modifying any and all insurance coverage in existence with respect to the Receivership Property.

2.    **Receiver's Duties and Authority.**

2.1.    The Receiver shall be vested with and shall discharge the following authority, powers and duties:

(a)     To maintain, secure, manage, operate, repair and preserve the Receivership Property;

(b)     To change any and all locks to the Receivership Property and, if appropriate, limit access to some or all of the Receivership Property;

(c)     To assume control over the Receivership Property and to collect and receive all Income;

(d)     To prepare and maintain complete books, records, and financial reports of the Receivership Property, including, but not limited to, operating statements, Income statements, balance statements and all other statements prepared for the Receivership Property in a form acceptable to Plaintiff;

(e)     To allow Plaintiff, its counsel and appraisers or other independent third-party consultants engaged by Plaintiff or its counsel access to the Receivership Property at all reasonable times to inspect the Receivership Property and all books and records, and to cooperate with Plaintiff, its counsel, appraisers and other independent third-party consultants to evaluate the Project;

(f)     To retain, hire, or discharge on-site employees (none of whom are or shall be deemed to be employees of Plaintiff) and without any liability to the Receiver;

(g)     To establish pay rates for any on-site employees;

(h)     To review existing workers' compensation, disability, general liability and "all risks" hazard insurance and to retain, modify, cancel or purchase such insurance, and name the Plaintiff and the Receiver as additional insureds, as the Receiver deems appropriate for the Receivership Property's preservation and protection, but subject to Approval;

(i)     To maintain a separate account with a federally insured banking institution that is not a party to this action with offices in the State of Texas in the Receiver's own name, as Receiver, from which the Receiver shall disburse all authorized payments as provided in this Order;

(j)     To receive and endorse checks pertaining to the Receivership Property either in the Receiver's name or in Defendants' names;

(k)     To pay all appropriate real estate taxes, personal property taxes, any other taxes or assessments against the Receivership Property;

(l)     To prepare and file any tax returns stemming from the Receivership Property and the operation of the Receivership Property as may be required by law. The Receiver shall not be responsible for the preparation and filing of any tax returns for Defendants (including Income, personal property, commercial activity, gross receipts, sales and use or other tax returns) other than to provide Defendants with information in the Receiver's possession that may be necessary for Defendants to prepare and file their tax returns.

Defendants shall provide to the Receiver any information needed to file any tax returns for the Receivership Property;

(m)     To operate the Receivership Property under any existing name, including KTLM, KTLM-TV, and any associated marks[1] or trade names (or new name, if the Receiver deems appropriate to do so);

(n)     To determine and report to the Court and Plaintiff whether any Income previously received by Defendants have been used in violation of the Forbearance Agreement;

(o)     To open and review mail directed to Defendants and their representatives pertaining to the Receivership Property;

(p)     To seek assistance of law enforcement officials as necessary to preserve the peace and protect the Receivership Property;

(q)     The Receiver is authorized to continue, manage, operate, lease, market and, with the consent of Plaintiff, enter into a listing agreement and sell the Station and enter into all agreements necessary to effectuate the transfer of the Station's license from the FCC;

(r)     The Receiver is authorized to contact the television network Telemundo and arrange for and conduct, with Approval and the consent of that network, an assignment or transfer or creation of a new franchise agreement between the purchaser of the Station and the network;

(s)     The Receiver is authorized to make payments and disbursements, in the ordinary course of business, as may be needed and proper for the preservation of the Property, provided however, that the Receiver is not obligated to pay bills or sums due to companies owned or controlled by Defendants;

(t)     The Receiver is authorized to maintain appropriate insurance, authorized to continue any current policies in place, cancel such policies and authorized to purchase further insurance as the Receiver deems appropriate, subject to Approval;

(u)     The Receiver is authorized to: (1) enter into agreements and do all things necessary to continue normal business operations; (2) modify existing contracts in the ordinary course of the business; (3) pay all utilities, expenses and other obligations secured by, or which may give rise to, liens, and all other outstanding obligations to suppliers and servicers in the ordinary course of business, including, with Approval,

---

[1] Including the following mark: 

obligations incurred prior to the commencement of the receivership so long as the Receiver has determined that it is prudent to do so in order to maintain business relationships that are beneficial to the conduct of the receivership; 4) make repairs necessary to the maintenance of the Property, in order to preserve the Property in the ordinary course of business, provided, however, that the Receiver shall not make any improvements, repairs and/or remediation having a cost of $10,000.00 or more without first obtaining Approval; and 5) take all steps necessary to comply with all requirements, regulations and laws applicable to the Property, and to deal with all regulatory authorities in connection with the same;

(v)     The Receiver is authorized to, in its discretion, institute, prosecute, defend, compromise and/or intervene in or become a party to such actions or proceedings in state or federal courts which may in the Receiver's opinion be necessary for the protection, maintenance and preservation of the Property, for the carrying out of the terms of any order of the Court affecting the Property, to collect accounts receivable, to remove persons or entities from the Property, and/or to defend against any action brought against the Receiver acting in such capacity, and, with Approval, to utilize counsel for Plaintiff and/or retain other counsel in connection with the foregoing;

(w)     Notwithstanding the foregoing, the Receiver and the Receivership estate shall not be liable for the payment of taxes of any kind, assessments, goods or services provided to Defendants or utility charges prior to the date of this Order. Any individual or entity receiving a copy of this Order is hereby enjoined and restrained from discontinuing service to the Receiver or the Defendants based upon the non-payment of such taxes, assessments, goods or services or utilities prior to the date of this Order and from attempting to collect taxes, assessments, invoices and utility charges from the Receiver pre-dating the date of this Order. Each utility company or entity providing service to the Property shall forthwith transfer any deposits which it holds to the exclusive control of the Receiver and shall be prohibited from demanding that Receiver deposit additional funds in advance to maintain or secure such service;

(x)     The Receiver is authorized to take control of and manage Defendants' business and investments, including the payment of their debts;

(y)     The Receiver is hereby granted the authority to operate all licenses and permits including but not limited to FCC license registration number 0005851993;

(z)     Take any actions which could be taken by the officers, directors, managers, members, partners, trustees, general partner, or other principals of Defendants;

(aa)     Institute bankruptcy proceedings; and

(bb)     Perform all other powers and duties referred to above or necessary for the performance thereof and perform the general powers of receivers in cases of this kind, together with any and all other powers and acts necessary to carry out the receiver's duties and responsibilities.

## 3. Receiver's Authority Subject to Approval.

3.1.    In carrying out the duties contained in this Order, the Receiver is authorized, but not required to and only upon Approval to:

(a)    Engage contractors and skilled trades on a competitive bid basis to complete tenant improvements to the Property and/or maintain the Property and to execute such contracts for such purposes as the Receiver deems appropriate, if the aggregate amount will exceed $10,000.00, but without Approval for a life-threatening or other health or safety emergency;

(b)    Enforce, modify, terminate, or renegotiate any existing contracts affecting the Property;

(c)    Cancel, modify, terminate, or renegotiate any unexpired contracts entered into by Defendants that are burdensome on the Receivership Property;

(d)    Execute, cancel, modify, renegotiate or abrogate all service, maintenance or other contracts relating to the operations of the Receivership Property, but subject to Approval for contracts in excess of $10,000.00. All such contracts are to be terminated upon a sale or disposition of the Receivership Property or termination of the Receivership;

(e)    Employ attorneys, accountants, agents and other professionals as the Receiver may from time to time deem appropriate on such terms and conditions as the Receiver deems appropriate;

(f)    Borrow funds for purposes relating to the operations of the Receivership Property. Receiver shall not borrower funds without first providing Plaintiff, by advance written notice, a reasonable opportunity to elect to advance funds required by the Receiver;

(g)    Contest, protest or appeal any ad valorem tax or assessment, property tax, personal property tax or other tax or assessment pertaining to the Receivership Property. Any refund or reimbursement of taxes whether paid by the Receiver or Defendants shall be deemed Income to be applied as provided below;

(h)    Defend actions against Defendants related to the Receivership Property and may incur expenses to defend such actions to the extent that the Receiver believes, in its sole discretion that it will protect and preserve the Receivership Property; and

(i)    The Receiver is authorized to secure the continuation, renewal, reinstatement of any franchise or license agreements (or obtain a new franchise agreement) pertaining to the Receivership Property, including the payment of any franchise fees, but upon terms and conditions that are subject to Approval.

## 4. Extent of Receiver's Authority

4.1.    Although the Receiver shall have possession and control of the Receivership Property, the Receiver shall not take title to the Receivership Property. Title to the

Property shall remain in the name of Defendants or its assigns, unless foreclosed upon by the Plaintiff, in which case title to the Property will remain in the name of Defendants until the delivery of the Sheriff's Deed.

4.2.    Without limiting or expanding the foregoing, the Receiver is authorized to exercise all powers generally available and shall be subject to all the duties of a Receiver under the laws of the State of Texas that may be incidental to the management of the Receivership Property, as described in this Order. The Receiver shall have any additional powers that are provided by law and that the Court may from time to time direct or confirm.

4.3.    The Receiver shall not take any action that impedes or interferes with the foreclosure or foreclosure sale process in carrying out the duties contained in this Order.

4.4.    The Receiver shall, during the pendency of this action, have the right to apply to this Court for further instructions or directions.

4.5.    The authority granted to the Receiver is self-executing, unless the action requires Approval. The Receiver is authorized to act on behalf of, and in Defendants' name (or the Receiver's name), as the Receiver deems appropriate without further order of this Court and without personal recourse against the Receiver (subject to the general provisions, below).

4.6.    Any and all funds paid by and/or advanced by Plaintiff to the Receiver pursuant to this Order shall: (a) be deemed made pursuant to contract; (b) be added to the amount of the indebtedness owed by Defendants to Plaintiff; (c) be deemed secured by the liens and security interests in favor of Plaintiff under the loan documents on the Receivership Property to the same extent and with the same priority as other indebtedness secured by all existing liens and security interests under the loan documents in favor of Plaintiff; and (d) accrue interest at the interest rate provided under the loan documents in favor of Plaintiff. All such funds advanced, including interest on advances, shall be deemed a prior lien before the repayment of any and all other claims against the Receivership Property (except for taxes and assessments having first priority as a matter of law) or proceeds of either of them.

5.    **Receivership Property and Income**

5.1.    Income shall be applied as follows (but subject to lien rights granted to Plaintiff):

(a)    To the Receiver's approved fees and expenses;

(b)    To the current post-Receivership operating expenses, including any on-site employee payroll expenses, any Property taxes and any other taxes stemming from the operations of the Station and use in normal business operations incurred during the Receivership to the extent set forth in the Approved Budget. The Receiver shall not make disbursements other than permitted under the Approved Budget except for:

    (i)    life-threatening or other health or safety issues;

        (ii)      variations on individual line items not exceeding 10% so long as expenses in the aggregate are within 5% of the Approved Budget on a monthly basis, or;

        (iii)     upon Approval;

(c)     To the loan balance due Plaintiff until paid in full; and

(d)     Any surplus to be held pending further order of the Court.

5.2.     The Receiver shall make interim distributions of Income to Plaintiff after payment of current operating expenses, if the Receiver's "cash on hand" exceeds $50,000.00, unless otherwise agreed in writing by Plaintiff.

## 6.    Receiver's Compensation, Reports and Accounting

6.1.     The Receiver's compensation shall be as follows:

(a)     Receivership fees shall be charged at the rate of $10,000 per month plus the Receiver's plus two percent of the realized sales price of the Station; and

(b)     The Receiver's general office administration, accounting and overhead shall not be charged against the Income or Receivership Property; however, the Receiver shall be reimbursed for all reasonable travel expenses and attorneys' fees relating to the Receivership Property.

6.2.     The Receiver's compensation shall be paid (i) first from the Income from the Receivership Property and (2) next by the Plaintiff, but only to the extent that the Income is insufficient to pay the Receiver's compensation.

6.3.     Nothing in this Order shall require the Receiver to advance funds other than from Income without a bond or security for payment satisfactory to the Receiver.

6.4.     Within thirty (30) days after obtaining possession of the Receivership Property, the Receiver shall submit to the Court, a list of all the personal property, whether tangible or intangible of which it has taken possession.

6.5.     By the twentieth (20th) day of each calendar month, the Receiver shall prepare, a financial report (including, without limitation, an income and expense statement, balance sheet and a cash flow analysis) on a monthly basis pertaining to the operations of the Receivership Property during the immediately preceding month. The Receiver shall further prepare a proposed operating budget and capital budget for 2012 through the time of sale for the Receivership Property (the "Budget") within forty-five (45) days of the Effective Date (collectively, the "Receiver's Reports").

6.6.     The Budget will be reviewed by the Plaintiff and be subject to Approval. The Budget as approved shall be the "Approved Budget."

6.7.    The Receiver shall file with the Clerk of Court such interim reports as may be required by the Court after due notice and opportunity for hearing.

6.8.    The Receiver shall furnish to the parties' counsel any additional information regarding the Receivership Property as required by law and as may be reasonably requested by them, but the Receiver is authorized to request instructions from this Court should any party request information on documents which are unduly burdensome or expensive to produce, or to annoy or harass or for any other improper purpose.

6.9.    The Receiver shall furnish the Receiver's Report to the following:

| | |
|---|---|
| Hon. Gray H. Miller<br>Attn: Rhonda Moore-Konieczny<br>Case Manager<br>515 Rusk Avenue, Room 9010C<br>Houston, Texas 77002-2605 | Court's Address |
| Mr. Edmundo O Ramirez<br>Ellis Koeneke<br>1101 Chicago<br>McAllen, TX 78501<br>Phone: (956) 682-2440<br>Email: eor@ekrattorneys.com | Counsel for the Defendants |
| Ms. Lisa Powell<br>Jackson Walker L.L.P.<br>1401 McKinney Street, Suite 1900<br>Houston, Texas 77010<br>Phone: (713) 752-4200<br>Email: lpowell@jw.com | Counsel for the Plaintiff |

## 7.    **Confidentiality**

7.1.    "Confidential Information" means the Receiver's Reports and any other non-public information, the public release of which would adversely affect the Station, the sale of Station, or the conservation of the Receivership Property.

7.2.    The parties to this action, their counsel and all those in active concert or participation with them, who receive actual notice of this Order, or otherwise, shall keep all Confidential Information provided by the Receiver confidential, and all such persons are prohibited from disclosing any Confidential Information to anyone other than the parties to this action and their counsel without specific order of this Court, except, that Plaintiff and its attorneys and agents may provide potential purchasers, consultants, or other appropriate persons with information useful for the marketing, leasing, selling or management of the Receivership Property.

7.3.    All Confidential Information filed with the Court shall be filed under seal.

8461626v.1

## 8. Approval

8.1.    Whenever this Order uses the term "subject to Approval" or "Approval," the Approval shall not be deemed given except either (1) by a specific order approving of the action or conduct by signed order of this Court; or, alternatively (2) by Plaintiff's written consent either directly by Plaintiff or by its counsel.

## 9. Term and Final Accounting

9.1.    The Effective Date of this Order is the date that both of the following conditions are satisfied: (i) the Receiver posts a bond of $_____ with the Clerk of the Court as security for this Order; and (ii) the Receiver executes the receiver's oath.

9.2.    This Receivership shall continue until further order of the Court.

9.3.    The Receiver can be removed either (1) automatically thirty (30) days after the filing of a written demand for removal signed by Plaintiff's counsel and filed with the Court; or (2) in the Court's equitable discretion upon a motion showing good cause for such removal. If the Receiver is removed, a successor receiver may be appointed by a stipulated order on behalf of Plaintiff and Defendants. If Plaintiff and Defendants cannot agree on a successor receiver, the Court will name a successor receiver by further order.

9.4.    Immediately upon termination of the Receivership, the Receiver shall turnover to Plaintiff or its designee (including any property manager), all of the Receivership Property unless otherwise ordered by the Court.

9.5.    Neither the termination of the Receivership nor the Receiver's removal will discharge the Receiver or the Receiver's bond.

9.6.    The Receiver shall submit a final accounting (with copies to the recipients of the Receiver's Reports as identified above) for approval by the Court within thirty (30) days after the termination of the Receivership or the Receiver's removal.

9.7.    Only after the Court approves the Receiver's final accounting, may the Receiver be discharged, and the Receiver's bond be cancelled.

## 10. General Provisions

10.1.    No party shall file suit against the Receiver, or take other action against the Receiver, without an order of this Court permitting a suit or action provided, however, that no prior Court order is required to file a motion in this action to enforce the provisions of this Order or any other order of this Court in this action.

10.2.   The Receiver and its employees, agents and attorneys shall have no personal liability in connection with any liabilities, obligations, liens or amounts owed to any of Defendants' creditors because of its duties as Receiver. Nothing in this Order shall grant any rights to trade creditors or general unsecured creditors, whose rights shall be solely determine in accordance with Texas law.

10.3.   The Receiver and its employees, agents and attorneys shall have no personal liability and they shall have no claim asserted against them relating to the Receiver's duties under this Order, except for claims due to their gross negligence, gross or willful misconduct, malicious acts and/or the failure to comply with this Court's orders.

10.4.   All Defendants and their property managers, employees, and agents, and all those in active participation or concert with them who receive notice of this Order, and all those having claims against the Receivership Property, who receive notice of this Order, are temporarily enjoined from and shall not:

(a) **Commit Waste.** Commit or permit any waste on all or any part of the Receivership Property, or suffer, commit or permit any act on all or any part of the Receivership Property in violation law, or remove, transfer, encumber or otherwise dispose of any of the Receivership Property;

(b) **Collect Income.** Demand, collect, receive, discount, or in any other way divert or use any of the Income;

(c) **Terminate Any Utility Service.** Terminate or withhold any electric, gas, water, sewer, telephone or other utility service supplying the Receivership Property, require any utility deposit or otherwise interfere with the continued operations of the Receivership Property;

(d) **Interfere with the Receiver.** Directly or indirectly interfere in any manner with the discharge of the Receiver's duties under this Order or the Receiver's possession of and operation or management of the Receivership Property;

(e) **Transfer or Encumber the Receivership Property.** Expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in, encumber, conceal or in any manner whatsoever deal in or dispose of the whole or any part of the Receivership Property including, but not limited to, the Income without prior court order; and/or

(f) **Impair the Preservation of the Receivership Property.** Do any act which will, or which will tend to impair, defeat, divert, prevent or prejudice the preservation of the Receivership Property, including the Income, or the preservation of Plaintiff's interest in the Receivership Property and the Income.

10.5.   Defendants Sunbelt and Vale shall assist the Receiver in executing any documents necessary to transfer any FCC licenses or permits, other licenses or permits, and any franchise agreement to the Receiver and/or to the purchaser of the Station.

10.6.   The Receiver shall faithfully perform and discharge the Receiver's duties and obey the Court orders.

10.7.   The Receiver is subject to personal jurisdiction of the Court.

10.8.   The Receiver's duty to act as Receiver is subject to the Receiver's written acceptance and approval of the terms of this Order. Upon acceptance, the Receiver shall be bound by each and every term contained in this Order and each and every obligation of the Receiver imposed by this Order.

## 11.   Amendment of Order

11.1.   This Order may be amended for cause after a motion or hearing.

## 12.   No Prejudice to Foreclosure/Final Order

12.1.   This Order shall not prejudice Plaintiff's foreclosure under any security agreement with respect to the Receivership Property, or any of Plaintiff's other claims as set forth in the Verified Complaint and any amendments thereto.

12.2.   The Court finds there is no just reason for delay and therefore enters this Order as a final order.

It is so ORDERED.

Signed on this _6th_ day of September 2012, at Houston, Texas.

Gray H. Miller
United States District Judge