# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| COMPASS BANK, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-11-964 |
| | § | |
| SUNBELT MULTIMEDIA CO., *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the court is plaintiff Compass Bank's motion for summary judgment. Dkt. 81. Defendants have not filed a response to Compass Bank's motion. After considering the motion, record, and applicable law, the court is of the opinion that Compass Bank's motion for summary judgment should be **GRANTED**.

## I. BACKGROUND

On May 21, 1999, Sunbelt Multimedia Co. ("Sunbelt") executed and delivered to Texas State Bank a promissory note in the principal amount of $7,000,000.00 ("Note 1"). Ex. 1-A. Multimedia Associates, Ltd. ("Multimedia") became a co-maker of Note 1 on March 15, 2000, pursuant to an Assumption and Amendment Agreement. Ex. 1-B. In March 2000, KTLM TV, Inc. ("KTLM") and Multimedia also each executed and delivered to Texas State Bank a guaranty, which unconditionally guaranteed the payment of Note 1 and other notes executed by Sunbelt and/or Multimedia. Ex. 1-C. Further, in November 2011, Advertising Executives, L.L.C. ("AdEx") executed and delivered to plaintiff a guaranty, which unconditionally guaranteed payment of all indebtedness of Sunbelt, Ex. 1-U (together, the KTLM guaranty, the Multimedia guaranty, and the AdEx guaranty will be referred to as "Note 1 Guaranties"). Note 1 is now in default and remains unpaid. Ex. 2-A. Plaintiff is

successor in interest to Texas State Bank and the owner and holder of Note 1 and the Note 1 Guaranties. Ex. 1-S; Ex. 1 at ¶5. Demands have been sent to Sunbelt, Multimedia, KTLM, and AdEx requesting payment, but no one has made payment under the promissory note or the guaranty agreements. Ex. 2-A.

On October 20, 2004, Multimedia, by KTLM as its general partner, executed and delivered to Texas State Bank a promissory note in the principal amount of $793,413.95 ("Note 2"). Ex. 1-E. In October 2004, KTLM and Sunbelt also each executed and delivered to Texas State Bank a guaranty, which unconditionally guaranteed payment and performance of all of Multimedia's indebtedness under Note 2 and all future indebtedness or obligations. Ex. 1-F. Further, in November 2011, AdEx executed and delivered to plaintiff a guaranty, which unconditionally guaranteed payment of all indebtedness of Multimedia, Ex. 1-U (together, the KTLM guaranty, the Sunbelt guaranty, and the AdEx guaranty will be referred to as "Note 2 Guaranties"). Note 2 is now in default and remains unpaid. Ex. 2-A. Plaintiff is successor in interest to Texas State Bank and the owner and holder of Note 2 and the Note 2 Guaranties. Ex. 1-S; Ex. 1 at ¶5. Demands have been sent to Multimedia, Sunbelt, KTLM, and AdEx requesting payment, but no one has made payment under the promissory note or the guaranty agreements. Ex. 2-A.

On October 6, 2008, Multimedia, by KTLM as its general partner, executed and delivered to Texas State Bank a promissory note in the principal amount of $1,260,000.00 ("Note 3"). Ex. 1-G. On March 15, 2000, Sunbelt executed and delivered to Texas State Bank a promissory note in the principal amount of $1,778,372.00 ("Note 4"). Ex. 1-H. Note 3 and Note 4 have been paid.

On May 17, 2004, Gutierrez Oil Company ("Gutierrez") executed and delivered to Texas State Bank a promissory note in the principal amount of $850,000.00 ("Note 5"). Ex. 1-I. In

2

November 2008, Sunbelt executed and delivered to Texas State Bank a guaranty, which unconditionally guaranteed payment and performance of all of Gutierrez's indebtedness under Note 5 and all then-existing and future indebtedness or obligations of Gutierrez. Ex. 1-J. Multimedia, by KTLM as its general partner, also executed a guaranty, which unconditionally guaranteed payment and performance of all of Gutierrez's indebtedness under Note 5 and all then-existing and future indebtedness or obligations of Gutierrez in March 2009. *Id.* Further, in November 2011, AdEx executed and delivered to plaintiff a guaranty, which unconditionally guaranteed payment of all indebtedness of Gutierrez, Ex. 1-U (together, the Sunbelt guaranty, the Multimedia guaranty, and the AdEx guaranty will be referred to as "Note 5 Guaranties"). Note 5 is now in default and remains unpaid. Ex. 2-A. Plaintiff is successor in interest to Texas State Bank and the owner and holder of Note 5 and the Note 5 Guaranties. Ex. 1-S; Ex. 1 at ¶5. Demands have been sent to Gutierrez, Multimedia, Sunbelt, KTLM, and AdEx requesting payment, but no one has made payment under the promissory note or the guaranty agreements. Ex. 2-A.

On November 23, 2004, Gutierrez executed and delivered to Texas State Bank a promissory note in the principal amount of $2,310,250.00 ("Note 6"). Ex. 1-K. In November 2008, Sunbelt executed a guaranty, which unconditionally guaranteed payment and performance of all of Gutierrez's indebtedness under Note 6. Ex. 1-J. Multimedia, by KTLM as its general partner, also executed a guaranty, which unconditionally guaranteed payment and performance of all of Gutierrez's indebtedness under Note 6 in March 2009. *Id.* Further, in November 2011, AdEx executed and delivered to plaintiff a guaranty, which unconditionally guaranteed payment of all indebtedness of Gutierrez, Ex. 1-U (together, the Sunbelt guaranty, the Multimedia guaranty, and the AdEx guaranty will be referred to as "Note 6 Guaranties"). Note 6 is now in default and remains

3

unpaid. Ex. 2-A. Plaintiff is successor in interest to Texas State Bank and the owner and holder of Note 6 and the Note 6 Guaranties. Ex. 1-S; Ex. 1 at ¶5. Demands have been sent to Gutierrez, Multimedia, Sunbelt, KTLM, and AdEx requesting payment, but no one has made payment under the promissory note or the guaranty agreements. Ex. 2-A.

On June 17, 2005, Gutierrez executed and delivered to Texas State Bank a promissory note in the principal amount of $800,000.00 ("Note 7"). Ex. 1-M. In November 2008, Sunbelt executed a guaranty, which unconditionally guaranteed payment and performance of all of Gutierrez's indebtedness under Note 7. Ex. 1-J. Multimedia, by KTLM as its general partner, also executed a guaranty, which unconditionally guaranteed payment and performance of all of Gutierrez's indebtedness under Note 7 in March 2009. *Id.* Further, in November 2011, AdEx executed and delivered to plaintiff a guaranty, which unconditionally guaranteed payment of all indebtedness of Gutierrez, Ex. 1-U (together, the Sunbelt guaranty, the Multimedia guaranty, and the AdEx guaranty will be referred to as "Note 7 Guaranties"). Note 7 is now in default and remains unpaid. Ex. 2-A. Plaintiff is successor in interest to Texas State Bank and the owner and holder of Note 7 and the Note 7 Guaranties. Ex. 1-S; Ex. 1 at ¶5. Demands have been sent to Gutierrez, Multimedia, Sunbelt, KTLM, and AdEx requesting payment, but no one has made payment under the promissory note or the guaranty agreements. Ex. 2-A.

On September 22, 1999, Sunbelt executed a real property building lease (the "Lease Agreement") for an office building owned by Texas State Bank in McAllen, Texas. Ex. 1-O. The Lease Agreement provided for an original lease term of sixty months, beginning on September 1, 1999, and it imposed specific obligations on Sunbelt regarding the payment of rent and holding-over. *Id.* Sunbelt's promises and obligations associated with the Lease Agreement were secured by

4

Samuel Vale[1] ("Vale") pursuant to a guaranty executed and delivered to Texas State Bank on March 15, 2000, which guaranteed payment and performance of all then-existing and future indebtedness of Sunbelt and Multimedia. Ex. 1-P. On March 2, 2009, KTLM and Multimedia also each executed guaranties, which guaranteed payment of all of Vale's then-existing indebtedness, obligations, or liabilities, of any kind owed to plaintiff. Ex. 1-Q. Further, in November 2011, AdEx executed and delivered to plaintiff a guaranty, which unconditionally guaranteed payment of all indebtedness of Sunbelt, Vale, KTLM, and Multimedia, Ex. 1-U (together, the Vale guaranty, the Multimedia guaranty, the KTLM guaranty, and the AdEx guaranty will be referred to as "Lease Agreement Guaranties"). Plaintiff is successor in interest to Texas State Bank under the Lease Agreement and the owner and holder of the Lease Agreement and the Lease Agreement Guaranties. Ex. 1-S; Ex. 1 at ¶5. Sunbelt is in default on the rental payments under the Lease Agreement and such rental payments remain unpaid. Ex. 2-A. Additionally, Sunbelt is in default because it is holding over on the property in a prohibited manner. *Id.* Demands have been sent to Vale, Multimedia, Sunbelt, KTLM, and AdEx requesting payment, but no one has made payment of the delinquent amounts due under the Lease Agreement. Ex. 2-A.

On December 23, 2008, plaintiff and Sunbelt, Multimedia, KTLM, Gutierrez, and Vale executed a Forbearance Agreement (the "Forbearance Agreement"). Ex. 1-R. Under the Forbearance Agreement, plaintiff agreed to forebear foreclosing on certain collateral which it had a right to sell under the Lease Agreement, until the earlier of the date the Forbearance Agreement was breached or November 20, 2009. *Id.* The Forbearance Agreement also contained cross-default

---

[1] All of plaintiff's claims against Vale were dismissed with prejudice on December 10, 2012. Dkt. 53.

provisions, which provided that a breach of the Forbearance Agreement, Note 3, or the Lease Agreement constituted a default under the Forbearance Agreement, Note 3, or the Lease Agreement. *Id.* In November 2011, AdEx executed and delivered to plaintiff a guaranty, which unconditionally guaranteed payment of all indebtedness of Sunbelt, Vale, KTLM, Multimedia, and Gutierrez. Ex. 1-U. Sunbelt, Vale, KTLM, Multimedia, and Gutierrez have each breached the Forbearance Agreement by failing to pay amounts due under Note 3 as required by the Forbearance Agreement and by failing to obtain a loan commitment on or before October 31, 2009 from a lender other than plaintiff. Ex. 1-R; Ex. 2-A. Plaintiff has sent demands for full payment and compliance with the Forbearance Agreement to Vale, Multimedia, Sunbelt, KTLM, Gutierrez, and AdEx. *Id.* Despite such demands, Sunbelt, Multimedia, KTLM, Gutierrez, and AdEx remain in breach.[2] Dkt. 23, p. 16, Ex. DD.

## II. LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The moving party bears the initial burden of informing the court of evidence, if any, that demonstrates the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine dispute of material fact. *Id.* at 322. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[2] Although sums are due under the Forbearance Agreement, plaintiff is only electing to seek summary judgment based on the sums due under the notes, guaranties, and the Lease Agreement. Dkt. 81, p. 6 n.3.

6

party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). A dispute is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248. The substantive law determines the facts which are material in each case. Lastly, in determining whether a genuine dispute of material fact exists, the court views the evidence and draws inferences in the light most favorable to the nonmoving party. *Id.* at 255; *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

Generally, when a party does not respond to a motion, the motion will be deemed unopposed. *See* S.D. TEX. L.R. 7.4 ("Failure to respond will be taken as a representation of no opposition."). However, a district court may not grant a motion for summary judgment merely because it is unopposed. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 468 (5th Cir. 2010); *John v. State of La. (Bd. of Trustees for State Colleges & Universities)*, 757 F.2d 698, 709 (5th Cir. 1985) (a motion for summary judgment cannot be granted simply because there is no opposition, even if the failure to oppose violated a local rule). When a party does not file an opposition to a motion for summary judgment, the district court is permitted to consider the facts listed in support of the motion as undisputed and grant summary judgment if it is shown that the movant is entitled to judgment in its favor. *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

### III. ANALYSIS

In this case, Compass Bank, as successor in interest to Texas State Bank, seeks damages resulting from the breach of certain promissory notes and guaranties entered into by defendants.[3]

---

[3] The court's analysis is limited to Count 1 relating to Notes 1, 2, 5, 6, and 7; Count 2; Count 3 relating to the guaranties securing Notes 1, 2, 5, 6, and 7; Count 5; and Count 6. Compass Bank has represented that Notes 3 and 4 have been paid, which would appear to make the remaining parts of Counts

As set forth in detail *supra*, plaintiff has shown its lawful right to collect on the defaulted promissory notes, corresponding guaranties, and the Lease Agreement. Given that no opposition has been lodged to plaintiff's motion for summary judgment, the court is permitted to find Compass Bank's factual recitation undisputed.

To recover for breach of a promissory note, a plaintiff must prove the note in question, that the defendant signed the note, that the plaintiff is the legal owner and holder of the note, and that a certain balance is due and owing on the note. *Truestar Petroleum Corp. v. Eagle Oil & Gas Co.*, 323 S.W. 3d 316, 319 (Tex. App.–Dallas 2010, no pet.). Here, the undisputed evidence establishes as a matter of law that Sunbelt, Multimedia, Gutierrez, and KTLM (as Multimedia's general partner)[4] executed promissory notes, requiring that the principal amounts loaned to defendants plus interest be repaid to Texas State Bank. As Texas State Bank's successor in interest, Compass Bank has become the owner and holder of such notes. Despite multiple demands, defendants have failed to pay the amounts due and owing under Notes 1, 2, 5, 6, and 7, thereby causing Compass Bank damages. Compass Bank, therefore, is entitled to summary judgment on Count 1 with respect to Notes 1, 2, 5, 6, and 7 and Count 2 of its second amended complaint (Dkt. 23).

Likewise, Compass Bank asserts claims relating to the breach of the Lease Agreement entered into by Sunbelt. The essential elements of a breach of contract claim are: (1) the existence

---

1 and 2 moot. Further, Compass Bank stated that it does not seek summary judgment with respect to Count 4 concerning the Forbearance Agreement.

[4] Under Texas law, general partners of a limited partnership are jointly and severally liable with each other and with the partnership for partnership debts. *Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 272-73 (Tex. App.–Dallas 2011, pet. denied); *see also* TEX. BUS. ORG. CODE § 153.152(b) ("Except as provided by this chapter or the other limited partnership provisions, a general partner of a limited partnership has the liabilities of a partner in a partnership without limited partners to a person other than the partnership and the other partners.").

of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.–Houston [1st Dist.] 2001, no pet.). Sunbelt entered into a Lease Agreement with Texas State Bank for the lease of office space owned by Texas State Bank. The Lease Agreement required that Sunbelt pay rent for such real property on a monthly basis and imposed obligations on Sunbelt with respect to holding over on the property. KTLM, Multimedia, and AdEx also executed guaranties obligating them to repay the indebtedness of Sunbelt. As Texas State Bank's successor in interest, Compass Bank has become the holder of the Lease Agreement and owner of the guaranty agreements executed by KTLM, Multimedia, and AdEx. Sunbelt remains in default under the terms of the Lease Agreement. Specifically, Sunbelt is delinquent on the rental payments and continues to hold-over on the property, thereby causing Compass Bank damages. Compass Bank is, therefore, entitled to summary judgment on Count 5 of its second amended complaint.

Additionally, Compass Bank asserts that the guaranties in this case have been breached. To recover on a guaranty contract, a plaintiff must show: (1) the existence and ownership of the guaranty contract; (2) the terms of the underlying contract by the holder; (3) the occurrence of the condition upon which liability is based; and (4) the guarantor's failure or refusal to perform the promise. *Lee v. Martin Marietta Materials Sw., Ltd.*, 141 S.W.3d 719, 720-21 (Tex. App.–San Antonio 2004, no pet.). Here, the undisputed evidence shows KTLM, Multimedia, Sunbelt, and AdEx executed guaranties, which unconditionally guaranteed the payment of Notes 1, 2, 5, 6, and 7. As Texas State Bank's successor in interest, Compass Bank has become the owner and holder of such guaranties. The payments on the underlying notes have gone into default. Despite multiple demands, KTLM, Multimedia, Sunbelt, and AdEx have failed to repay the amounts due and owing

9

under Notes 1, 2, 5, 6, and 7, thereby breaching their guaranty obligations and causing Compass Bank damages. Compass Bank, therefore, is entitled to summary judgment on Count 3 of its second amended complaint with respect to Notes 1, 2, 5, 6, and 7.

Finally, Compass Bank has pled and demonstrated it is entitled to attorneys' fees, interest, and costs pursuant to the terms of the various contractual agreements and pursuant to Texas Civil Practice and Remedies Code § 38.001(8). Section 38.001 authorizes an award of attorneys' fees "in addition to the amount of a valid claim" in a breach of contract case. TEX. CIV. PRAC. & REM. CODE § 38.001(8); *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 436 (5th Cir. 2003) ("An award of attorneys' fees is mandatory for a party prevailing in a breach of contract case."); *AMX Enterprises, L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 516 (Tex. App.–Fort Worth 2009, no pet.). Because, however, this Order does not resolve all of the claims asserted in the current live pleading and the receiver must complete his duties, the court will consider Compass Bank's application and evidence of attorneys' fees upon entry of final judgment.

### IV. CONCLUSION

The undisputed evidence shows that Compass Bank is entitled to summary judgment on the following claims asserted in its second amended complaint: (1) Count 1: A, B, E, F, and G; (2) Count 2; (3) Count 3: A, B, E, F, G, and H; (4) Count 5; and (5) Count 6. Therefore, Compass Bank's motion for summary judgment (Dkt. 81) is GRANTED.

It is so ORDERED.

Signed at Houston, Texas on November 13, 2014.

_____
Gray H. Miller
United States District Judge